IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CANOPY GROWTH CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:20-cv-01180-ADA |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| GW PHARMA LIMITED and | ) | |
| GW RESEARCH LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF

Steven M. Zager
KING & SPALDING LLP
500 West 2nd Street
Suite 1800
Austin, TX 78701
Telephone: (512) 457-2000
Facsimile: (512) 457-2100
szager@kslaw.com

Gerald J. Flattmann, Jr.
KING & SPALDING LLP
1185 Avenue of the Americas,
35th Floor
New York, NY 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
gflattmann@kslaw.com

*Attorneys for Defendants GW Pharma Limited and GW Research Limited*

# **TABLE OF CONTENTS**

I. Canopy's Construction Disregards, and Contradicts, the Plain and Ordinary Meaning of the Claims As Written ................................................................................... 1

II. Canopy's Construction Improperly Renders Superfluous the Express Language of the Claims ................................................................................................................................ 4

III. Canopy Relies on Unclaimed Embodiments, and Undisclosed Subject Matter, To Improperly Expand Claim Scope ................................................................................... 6

IV. The Prosecution History Shows a Clear Disclaimer ...................................................... 8

V. The Intrinsic Record Outweighs Canopy's Extrinsic Evidence ..................................... 10

VI. Conclusion ...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

*Advanceme, Inc. v. Rapidpay, LLC*,
  No. CIV.A. 6:05-CV-424, 2006 WL 3761975 (E.D. Tex. Dec. 21, 2006) ............................... 8

*Baran v. Med. Device Techs., Inc.*,
  616 F.3d 1309 (Fed. Cir. 2010) ............................................................................................. 7

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
  713 F.3d 1090 (Fed. Cir. 2013) ............................................................................................. 2

*Digital-Vending Servs. Int'l v. Univ. of Phx., Inc.*,
  672 F.3d 1270 (Fed. Cir. 2012) ............................................................................................. 4

*Eon Corp. IP Holdings v. Silver Spring Networks*,
  815 F.3d 1314 (Fed. Cir. 2016) ............................................................................................. 2

*Goldenberg v. Cytogen*,
  373 F.3d 1158 (Fed. Cir. 2004) ............................................................................................. 8

*Light Guard Sys., Inc. v. Spot Devices, Inc.*,
  No. 3:10-cv-0737-LRH-RAM, 2012 WL 2131943 (D. Nev. Jun. 12, 2012) ........................ 5

*LMT Mercer Grp., Inc. v. Maine Ornamental, LLC*,
  No. 10-4615, 2014 WL 183823 (D.N.J. Jan. 16, 2014) ........................................................ 5

*Mass. Inst. of Tech. v. Shire Pharms., Inc.*,
  839 F.3d 1111 (Fed. Cir. 2016) ............................................................................................. 9

*Omega Eng'g, Inc, v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ....................................................................................... 9, 10

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ....................................................................................... 2, 10

*PPC Broadband, Inc. v. Corning Optical Comms. RF, LLC*,
  815 F.3d 747 (Fed. Cir. 2016) ............................................................................................... 6

*PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*,
  525 F.3d 1159 (Fed. Cir. 2008) ............................................................................................. 7

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
  983 F.3d 1367 (Fed. Cir. 2021) ......................................................................................... 6, 7

*SmithKline Beecham Corp. v. Apotex Corp.*,
  403 F.3d 1331 (Fed. Cir. 2005) ........................................................................................... 10

*SuperGuide Corp. v. DirecTV Enters, Inc.*,
  358 F.3d 870 (Fed. Cir. 2004) ............................................................................................... 5

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*,
  529 F.3d 1364 (Fed. Cir. 2008) ................................................................................... 5, 7, 10

*Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*,
  473 F.3d 1173 (Fed. Cir. 2006) ............................................................................................. 9

As explained in Defendants' opening claim construction brief (Dkt. No. 27, "Op. Br."), Canopy's proposed construction seeks to improperly broaden the disputed claim term to capture an ***unclaimed alternative embodiment*** of the '632 patent – specifically, extraction with subcritical temperature and supercritical pressure. The claims each require "$CO_2$ in liquefied form under **subcritical *pressure* *and* *temperature* conditions**."[1] (*See* '632 patent, claims 1 and 14). While Canopy purports to propose a "plain and ordinary meaning" construction in its responsive brief (Dkt. No. 29, "Resp. Br."), Canopy in fact improperly ***rewrites*** this claim term to fit its unsupported infringement allegations. In particular, Canopy strikes out the essential words "***pressure and temperature***" – leaving only the far broader non-claim term "**subcritical conditions**." Nothing in the intrinsic record, the applicable case law, or even Canopy's cited extrinsic evidence supports Canopy's redrafting of the claims, without regard for their plain language. Defendants respectfully request that the Court adopt Defendants' proposed construction, which states expressly what is clear on the face of the claims: the plain and ordinary meaning of the disputed term as actually written requires both the "***pressure and temperature* conditions**" to be "**subcritical**."

### I. CANOPY'S CONSTRUCTION DISREGARDS, AND CONTRADICTS, THE PLAIN AND ORDINARY MEANING OF THE CLAIMS AS WRITTEN

Canopy's response purports to set forth the "plain and ordinary meaning" of the disputed term. (Resp. Br. at 4-7.) But Canopy's approach is fundamentally flawed, because it addresses only the construction of the non-claim term "**subcritical conditions**," rather than the actual claim term, "$CO_2$ in liquefied form under **subcritical *pressure* *and* *temperature* conditions**."

Canopy errs at the outset by disregarding *Phillips*' admonition that the ordinary meaning of claim terms must be determined in the context of the intrinsic record. (Resp. Br. at 4, 6.)

---

[1] Unless otherwise noted, all emphasis is added, and all internal citations and internal quotation marks are omitted.

"Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent," not the "meaning of the term in the abstract." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005); *see also id.* at 1313 ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."); *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1094 (Fed. Cir. 2013) ("[A] term's ordinary meaning must be considered in the context of all the intrinsic evidence, including the claims, specification, and prosecution history."); *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1320 (Fed. Cir. 2016) ("The ordinary meaning of a claim term is not the meaning of the term in the abstract," but rather, "its meaning to the ordinary artisan after reading the entire patent") (citing *Phillips*).

It would be wrong enough if Canopy analyzed the "plain and ordinary meaning" of the disputed term in a vacuum, divorced from the intrinsic evidence in the specification and the claims themselves. But Canopy errs even further by conducting an abstract, litigation-driven analysis of the term "**subcritical conditions**" – which is found ***nowhere in the claims***. For example, Canopy:

- Accuses Defendants of "improperly narrowing the **subcritical conditions** of liquefied $CO_2$" (Resp. Br. at 7);
- Contends that the claims are drawn to a "broad catch-all embodiment of **subcritical conditions**" (*id.* at 10-11);
- Contends that the claims "encompass[] the full range of pressure and temperature conditions for $CO_2$ in the liquid phase of **subcritical conditions**" (*id.* at 13); and
- Refers to "the claimed **subcritical conditions**" (*id.* at 17.)

Canopy then compounds that error by largely resting its purported "plain meaning" construction on how the ***extrinsic evidence*** used the non-claim term "**subcritical conditions**" – rather than how

2

the actual claim term reciting "**subcritical *pressure and temperature* conditions**" would have been understood in light of the ***intrinsic evidence***. (*See, e.g., id.* at 17 (Canopy contending that "extrinsic evidence" of how an ordinary artisan would "understand **subcritical conditions**" supports its "plain and ordinary meaning" construction); *id.* at 19-20 (discussing the ordinary artisan's purported "understanding of **subcritical conditions**").

Tellingly, Canopy's imagined non-claim term – which apparently would encompass the ***full range*** of "**subcritical conditions**" for liquefied $CO_2$ (*see, e.g.*, Resp. Br. at 13) – lacks any basis in the '632 patent specification. Rather, as explained in Defendants' opening brief, the '632 patent sets forth three alternative extraction conditions as highlighted below:

> [P]lant material is extracted with the aid of $CO_2$ under supercritical pressure and temperature conditions at a temperature in the range of approx, 31° C. to 80° C. and at a pressure in the range of approx. 75 bar to 500 bar, or in the subcrical [sic] range at a temperature of approx. 20° C. to 30° C. and a supercritical pressure of approx. 100 bar to 350 bar; or extracted under subcrical [sic] pressure and temperature conditions . . . .

(*See* Op. Br. at 7-8; Ex. 1 at 5:10-20.)[2]  Each of these separate alternatives is clearly delineated by the connector "or" and a comma or semicolon. (Ex. 1 at 5:10-20.)

Canopy's $CO_2$ phase diagrams, as modified below, succinctly illustrate its effort to improperly broaden the claims beyond their plain and ordinary meaning.  The claim term at issue – "$CO_2$ in liquefied form under **subcritical *pressure and temperature* conditions**" – is illustrated by the blue shaded area below, where (1) $CO_2$ is liquid, and (2) both pressure ***and*** temperature are below the critical point.  Canopy's non-claim term "**subcritical conditions**," on the other hand, would unduly capture the ***entire range*** of subcritical conditions for liquid $CO_2$, including the region bounded by the red dotted line, and beyond at higher pressures indicated by the red arrow.

---

[2] "Ex. 1" *et seq.* refers to exhibits attached to the August 9, 2021 declaration of Steven M. Zager. "Ex. A" *et seq.* refers to exhibits attached to the August 24, 2021 declaration of Kurt Pankratz.

3



(*See* Resp. Br. at 5 (as modified); Op. Br. at 7-8.)

## II.   CANOPY'S CONSTRUCTION IMPROPERLY RENDERS SUPERFLUOUS THE EXPRESS LANGUAGE OF THE CLAIMS

Canopy contends that Defendants' construction adds a new claim limitation. (*E.g.*, Resp. Br. at 7.)  But the opposite is true: Canopy's purported "plain meaning" construction would ***delete*** the express claim language "*pressure and temperature*," and render those words superfluous:

| Disputed Claim Term | Canopy's Construction |
|---|---|
| $CO_2$ in liquefied form under **subcritical *pressure <u>and</u> temperature* conditions** | $CO_2$ in liquefied form under **subcritical** ~~**pressure and temperature**~~ **conditions** |

Canopy thus violates "the well-established rule that claims are interpreted with an eye toward giving effect to all terms in the claim . . . such that words in a claim are not rendered superfluous." *See, e.g.*, *Digital-Vending Servs. Int'l v. Univ. of Phx., Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012).

By focusing on the word "conditions" (*see* Resp. Br. at 8-9), Canopy distracts from the claims' use of the narrowing connector "*and*" in "*pressure and temperature*" – which requires **both** connected terms to be present. *See, e.g., TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1376 (Fed. Cir. 2008) (affirming construction requiring connection "to both the

4

said phone line and said electronic circuit board" where disputed term used the connector "and"); *SuperGuide Corp. v. DirecTV Enters, Inc.*, 358 F.3d 870, 886 (Fed. Cir. 2004) (construing claim limitation as requiring values from each of four recited categories based on use of "and" rather than "or"); *LMT Mercer Grp., Inc. v. Maine Ornamental, LLC*, No. 10-4615, 2014 WL 183823, at *26-27 (D.N.J. Jan. 16, 2014) (construing "at least one of a coating and a physical variation" to mean at least one coating *and* at least one physical variation, rather than at least one coating *or* at least one physical variation); *Light Guard Sys., Inc. v. Spot Devices, Inc.*, No. 3:10-cv-0737, 2012 WL 2131943, at *7 (D. Nev. Jun. 12, 2012) (construing claim term "dynamically compensate for poor visibility and night operating conditions" to require compensation for both conditions).

Rather than engage with how a skilled artisan would understand the actual claim phrase "**subcritical *pressure and temperature* conditions**" (including the connector "*and*"), Canopy's response dwells on the redrafted term "**subcritical conditions**," with the claim language "*pressure and temperature*" improperly excised. (*See supra* at 2.) But it defies logic and blackletter law to say, as Canopy does, that the claims use "**subcritical *pressure and temperature* conditions**" to specify nothing different than what a skilled artisan would simply call "**subcritical conditions**."

The intrinsic record does not support Canopy's expansion of the claims to encompass all possible "**subcritical conditions**." Canopy cites two portions of the '632 patent specification (5:10-20 and 6:10-12) as disclosing "subcritical embodiments" where temperature is below the critical temperature, and pressure is above the critical pressure. (Resp. Br. at 8.) But, as explained in Defendants' opening and Section I above, the language at 5:10-20 sets forth three alternative extraction conditions delineated by the connector "or" and commas or semicolons. (Ex. 1 at 5:10-20.) Thus, alternative [2] – reciting a "subcritical range" at defined ranges of subcritical temperature ("approx. 20° C to 30° C") and supercritical pressure ("approx. 100 bar to 350 bar")

5

– is a separate and distinct option from alternative [3], which recites "**subcricital [sic]** *pressure and* **temperature** *conditions*." Further on, the specification again recites alternative [2]. (*See* Ex. 1 at 6:10-12.) Nothing in those passages indicates that alternative [3], "**subcritical** *pressure and temperature* **conditions**" extends to all "**subcritical conditions**" – thereby engulfing alternative [2], and further extending to other "subcritical" ranges with no written description support.

Canopy also cites portions of the prosecution history purportedly "distinguishing prior art by contrasting **subcritical conditions** with supercritical conditions." (Resp. Br. at 8.) But that proves nothing – the parties agree that the claims exclude supercritical conditions. The question here is whether the claims require "**subcritical** *pressure* **and** *temperature* **conditions**," as opposed to the full unclaimed, undisclosed range of all "**subcritical conditions**." The answer: they do.

### III. CANOPY RELIES ON UNCLAIMED EMBODIMENTS, AND UNDISCLOSED SUBJECT MATTER, TO IMPROPERLY EXPAND CLAIM SCOPE

Canopy incorrectly argues that Defendants' construction "improperly reads out express subcritical embodiments described in the specification," (*see* Resp. Br. at 9), when (1) the alternative embodiment Canopy seeks to capture was never claimed, and (2) Canopy's "**subcritical conditions**" construction would extend beyond the embodiments to subject matter never disclosed. The Federal Circuit has "repeatedly reiterated" that courts "should not infer that any particular embodiment is included in a claim" when there is evidence to the contrary. *See, e.g.*, *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1378 (Fed. Cir. 2021) (listing cases); *see also PPC Broadband, Inc. v. Corning Optical Comms. RF, LLC*, 815 F.3d 747, 755 (Fed. Cir. 2016) (rejecting the proposition that "each and every claim ought to be interpreted to cover each and every embodiment"); *PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1166 (Fed. Cir. 2008) ("[D]isclosed embodiments may be within the scope of other allowed but unasserted claims."); *TIP Sys.*, 529 F.3d at 1373 ("Our precedent is replete with

examples of subject matter that is included in the specification, but is not claimed."); *Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010).  Courts "must not allow [a] disclosed embodiment to outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence." *SIMO*, 983 F.3d at 1367.

Canopy misconstrues the '632 patent as disclosing "a specific example of **subcritical conditions** . . . and a broad catch-all embodiment of **subcritical conditions**." (Resp. Br. at 10 (citing Ex. 1 at 5:6-20).)  The cited passage does not recite "**subcritical conditions**," but instead recites "**subcritical *pressure* and *temperature* conditions**" – a wholly distinct embodiment from alternative [2].  Nor did the applicant describe alternative [2] as a subcategory of alternative [3] during prosecution. To the contrary, during prosecution of the parent '078 patent, in response to a § 112 rejection, the applicant described identical language in then-pending claims as referring to three "*alternative* steps." (*See* Ex. 4 at 16, '078 patent prosecution history, 1/3/2009 Remarks at 8 ("Applicants point out that steps (a), (b), and (c) are alternative steps.") (underline in original).)

Consistently, for every exemplary embodiment that the '632 patent describes using the similar phrase "subcritical . . . in terms of *pressure* and *temperature*," *both* the pressure and temperature parameters are below the critical point. (*See, e.g.*, Ex. 1 at 7:22-24, 7:51-57.) Canopy, on the other hand, cannot point to *any* examples in the '632 patent – or any other disclosure in the '632 patent or its file history – where the phrase "**subcritical *pressure* and *temperature* conditions**" is redefined to instead mean the full range of "**subcritical conditions**" for liquid $CO_2$.

Accordingly, while the '632 patent specification *discloses* a "subcritical" embodiment with defined ranges of subcritical temperature (~ 20-30° C) and supercritical pressure (~ 100-350 bar) (Ex. 1 at 5:13-15, 6:10-12), the applicant chose not to *claim* that embodiment in the '632 patent. Instead, the applicant claimed "**subcritical *pressure* and *temperature* conditions**."  The applicant

7

certainly did not choose to claim the full range of "**subcritical conditions**" – and would have failed if they tried, because nothing in the written description supports such undisclosed subject matter.

### IV. THE PROSECUTION HISTORY SHOWS A CLEAR DISCLAIMER

Canopy raises three primary objections to Defendants' disclaimer argument: (1) Defendants rely in part on remarks during prosecution of the parent '078 patent; (2) Defendants refer to pending claims from the prosecution of the '632 patent that were canceled in a later amendment; and (3) the applicant's arguments distinguishing prior art during prosecution of the '632 patent are purportedly consistent with Canopy's construction. Canopy is wrong on all counts.

First, there is nothing improper with Defendants' reliance on the prosecution history of the '078 patent, from which the '632 patent claims priority as a continuation. The '078 patent's issued claims recite the same disputed term present in the '632 patent's claims, and both patents share the same specification. The prosecution record for the '078 patent is therefore highly probative evidence of how the applicant viewed the disputed claim language. *See, e.g., Advanceme, Inc. v. Rapidpay, LLC*, No. CIV.A. 6:05-CV-424, 2006 WL 3761975, at *4 (E.D. Tex. Dec. 21, 2006) ("[T]he prosecution history of a parent patent is part of the prosecution history of the child patent.") (citing *Goldenberg v. Cytogen*, 373 F.3d 1158, 1167 (Fed. Cir. 2004)). And, as described in Defendants' opening brief, the prosecution record for the '078 patent demonstrates that the applicant viewed "**subcritical *pressure* *and* *temperature* conditions**" as one of three ***alternative*** embodiments described in the specification and recited in the claims. (Ex. 5 at 16-17, '078 patent prosecution history, 1/3/2009 Remarks at 8-9 ("Applicants point out that steps (a), (b) and (c) are alternative steps . . . . The extraction step may be with $CO_2$ under any of conditions (a) or (b) or (c), namely, (a) supercritical pressure and temperature conditions; or (b) subcritical temperature range and a supercritical pressure; or (c) **subcritical *pressure* *and* *temperature* conditions**.").)

Nor does the subsequent prosecution history of the '632 patent negate the applicant's clear

8

disclaimer. "It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with reference to claims *that have been canceled* or rejected, and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). There is nothing improper in relying on arguments concerning claims that are later canceled to show disclaimer. Nor does Canopy's cited authority, involving arguments based on claims lacking the language in dispute, establish such a rule. *See Mass. Inst. of Tech. v. Shire Pharms., Inc.*, 839 F.3d 1111, 1120 (Fed. Cir. 2016) (no disclaimer based on pending claims that did not include disputed term); *Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1182 n. 2 (Fed. Cir. 2006) (no disclaimer where pending claims in parent application and asserted claims "d[id] not share a common claim term in dispute"). Here, the arguments forming the basis for disclaimer were made in support of claims containing the same disputed term recited in the asserted claims.

Canopy's reliance on the applicant's subsequent arguments distinguishing prior art teaching supercritical extraction is also misplaced. The applicant's distinguishing of supercritical conditions would apply under both parties' constructions – neither of which encompass supercritical extraction. The cited remarks are therefore not pertinent to the issue in dispute.

As described in Defendants' opening (Op. Br. at 11-13), the prosecution history shows a clear disclaimer. But even assuming the applicant's arguments and amendments do not rise to the level of disclaimer (they do), the prosecution record is significant intrinsic evidence that firmly supports Defendants' proposed construction. The applicant started by claiming all three alternative embodiments described in the specification and claimed in the parent '078 patent. And in response to Examiner rejections, they narrowed the claims to eliminate two. Canopy cannot now use claim construction to recapture that scope and beyond. *See Omega Eng'g,* 334 F.3d at 1323.

9

## V.   THE INTRINSIC RECORD OUTWEIGHS CANOPY'S EXTRINSIC EVIDENCE

*Phillips* cautioned that extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms," and "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1317-18.  Extrinsic evidence thus "need be given little weight in the court's claim construction if it is outweighed by clear intrinsic evidence." *TIP Sys.*, 529 F.3d at 1375.

Canopy selectively quotes from a handful of journal articles, one thesis, and one unrelated patent in an attempt to support its misguided claim construction. All but two of these (Dillow (Ex. E) and Stashenko (Ex. F)[3]) were published after the asserted priority date of the '632 patent (October 17, 2000) and are not properly considered in the claim construction analysis. *See SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1338 (Fed. Cir. 2005) ("Claim interpretation requires the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of invention.").  (*See also* Resp. Br. at 18-20 (Tables 1 and 2).)

Even if its extrinsic references are considered, Canopy's arguments miss the mark.  Canopy again attempts to define ordinary meaning in a vacuum – ignoring the plain language of the claims, and instead focusing on how a skilled artisan might have interpreted the non-claim term "**subcritical conditions**." (*See* Resp. Br. at 18, 20.)  None of Canopy's extrinsic references actually uses the phrase "**subcritical *pressure and temperature* conditions**," which is the language recited in the claims. (*See generally* Ex. E-L.)  These references are thus not pertinent to the parties' dispute, and certainly do not outweigh the express claim language and clear intrinsic record.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' proposed construction should be adopted.

---

[3] Stashenko (Ex. F) on its face appears to state that it was published in 2000, but the specific publication date is not clear.

Dated: September 3, 2021                                      Respectfully submitted,


                                                              */s/ Steven M. Zager*
                                                              Steven M. Zager
                                                              szager@kslaw.com
                                                              KING & SPALDING LLP
                                                              500 West 2nd Street
                                                              Suite 1800
                                                              Austin, TX 78701
                                                              Telephone: (512) 457-2000
                                                              Facsimile: (512) 457-2100

                                                              Gerald J. Flattmann, Jr.
                                                              gflattmann@kslaw.com
                                                              KING & SPALDING LLP
                                                              1185 Avenue of the Americas,
                                                              35th Floor
                                                              New York, NY 10036
                                                              Telephone: (212) 556-2100
                                                              Facsimile: (212) 556-2222

                                                              *Attorneys for Defendants GW Pharma*
                                                              *Limited and GW Research Limited*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served today, September 3, 2021, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(b)(1).

/s/ *Steven M. Zager*
Steven M. Zager